# STATE BANK OF GOOD THUNDER, BY ELMER A. BENSON, v. WILLIAM J. BRYSON.[1]

October 11, 1935.

No. 30,492.

*Thomas E. Latimer, Josiah A. Baker,* and *Robert G. Flynn,* for appellant.

*Wilson & Wilson,* for respondent.

LORING, JUSTICE.

This is an appeal from an order denying the plaintiff's motion for a new trial.

The State Bank of Good Thunder was taken into the custody and control of the commissioner of banks December 11, 1928. A part of the assets consisted of a 40-acre tract of land in Blue Earth county. It became known to the defendant, who owned adjoining

[1]Reported in 262 N. W. 561.

land, that the commissioner would accept $1,800 as the purchase price of this tract, and under date of August 2, 1930, he addressed a written offer in that amount to the commissioner of banks, describing the land which he wished to purchase and inclosing a certified check for $180, agreeing to pay the balance of the purchase price upon delivery of a deed and abstract showing merchantable title. September 13, 1930, the commissioner petitioned the district court for leave to accept the defendant's offer, which had been approved by the depositors' committee. The district court on that day authorized the acceptance of the offer and the making of a conveyance to the defendant and the doing of all other acts necessary to complete the transaction. The plaintiff cashed the check. The defendant was notified orally of the court's action, went into possession of the land, and farmed it for three years. The consummation of the transaction was delayed because of a defect in the title which the commissioner sought to cure by bringing an action to determine adverse claims. This action was found to be faulty, and another such action was brought which the court below found was also faulty in not including some of the known heirs whose interest in this land had not been acquired of record. Further delay was caused by plaintiff's loss of the abstract of title to the premises. February 13, 1934, the commissioner signed and addressed a notice to the defendant in which the contract of purchase by the defendant was recited, including the description of the land, and in which plaintiff tendered a deed and abstract. The document demanded performance of the contract by the defendant and asserted that the title was merchantable. The defendant took the position that the title was not merchantable, and this suit in ejectment was begun. The defendant defaulted, but the default judgment was opened up and he came into court asserting that the title was not merchantable but could be made so, and, relying on his contract and his readiness to perform, demanded specific performance. The case was then tried to the court, which made findings in favor of defendant that plaintiff take nothing and account for 1934 rental income from the premises and cease interference with defendant's possession.

1. The commissioner contends that the land is *in custodia legis* and that he had no power to sell it except by judicial sale under the order of the court and that there was no contract with the defendant. In this contention we think the commissioner is in error. In a proceeding of this character the commissioner is in no different position than would the bank itself be if the contract had been made with the bank. When *ex officio* the commissioner acts as receiver and with the approval of the court makes a contract, he is bound by the terms thereof. Like any other receiver, acting within his powers, he is bound to carry out the bargains which he has made under proper authority. The technical position of counsel for the commissioner that the commissioner was authorized only to make a deed and that until that was done he might back out of the bargain is untenable. All else aside, the order of the court authorized him to do whatever was necessary to close the transaction, and certainly an acceptance and demand for performance came within the expressed as well as the implied authority given by the court. In this case, after receiving the defendant's offer, which was complete in its terms, and after obtaining the approval of his depositors' committee, he sought and obtained the approval and authority of the court to accept the offer and to perform the contract as outlined therein. Perhaps at this time there was no memorandum signed by him describing the premises and binding him to convey them; but when on February 13, 1934, he signed a communication to the defendant describing the land and the terms of its purchase by the defendant and demanding from the defendant performance in accordance with such terms, there was completed a memorandum within the terms of the statute of frauds, and the commissioner, having been so authorized by the court, was bound thereby. If the situation were reversed and plaintiff seeking to hold defendant to his bargain, it is readily seen that appropriate remedies would be available.

2. The commissioner also contends that the title was merchantable as tendered. Briefly stated, the present defect in the title arises out of the fact that over 70 years ago the land in question was patented by the government to the heirs of David Thompson,

a deceased homestead entryman, and the probate court assumed to authorize a sale thereof by the administrator of Thompson's estate to one Nickerson. The plaintiff's chain of title comes from Nickerson. The probate sale was of course abortive due to lack of jurisdiction to do more than determine the heirship, and the heirs of David Thompson were not thereby deprived of title.

It is therefore clear that the abstract did not disclose a good title. A good title in the plaintiff depended on matter *dehors* the record, and as far as the abstract went the title might or might not be good, depending upon adverse possession in the plaintiff's predecessors in interest. Plaintiff and defendant contracted that the abstract should show merchantable title. It did not do so, and the defendant was not bound to accept such title until it was cleared up of record. Knudson v. Trebesch, 152 Minn. 6, 187 N. W. 613; Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L.R.A.(N.S.) 1170, 114 A. S. R. 723.

3. This result is not changed by the fact that the abstract on its face may not have disclosed the defect which was known to both parties, namely, that in the action to quiet title known heirs of Thompson were not joined. Both parties knew this and the court so finds, and both parties should have known that the judgment was not good as against those known heirs. Yennie v. Slingerland, 161 Minn. 372, 201 N. W. 605. As we regard the case, there is no question of estoppel here, merely a failure upon the part of the plaintiff to put the title in the condition contracted for.

The plaintiff also contends that the defendant voluntarily gave up possession of this land. The court's finding is to the contrary, and we are of the opinion that the record supports that finding. We have disposed of the case solely upon the questions presented.

The order appealed from is affirmed.